IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ROBERT GRIZZLE | § | |
| VS. | § | CIVIL ACTION NO. 9:21-CV-295 |
| JOHN FREDERICK, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Robert Grizzle, an inmate previously confined at the Eastham Unit of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against John Frederick, Quentin Tucker, Shantranethe Booker, Stephen Martin, Azm Hasan, Mervin Cleveland, Keithrick Griffin, Yvette Meisser, Raven Littlejohn, Jackie Barrone, and Mark Roberts.

The action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendants Cleveland, Griffin, Hasan, Littlejohn, and Roberts filed a Motion for Summary Judgment, and Plaintiff has had an opportunity to respond. This Report and Recommendation considers the merits of the Motion for Summary Judgment.

Factual Background

Plaintiff alleges Defendants Frederick and Tucker handcuffed Plaintiff to escort him to the medical department of the Eastham Unit on September 10, 2020. When they arrived at the medical department, Defendant Frederick allegedly told the medical staff to "watch out." Plaintiff alleges Defendant Frederick removed one of Plaintiff's handcuffs and then stated that Plaintiff was slipping

out of the handcuffs. Plaintiff contends Defendant Frederick held Plaintiff against the wall, grabbed his throat, choked him, and struck him several times with a closed fist. Plaintiff claims Defendant Frederick hit him in the face twice with handcuffs and then choked Plaintiff until he lost consciousness. Plaintiff alleges Defendants Booker, Griffin, Littlejohn, and Tucker were present during the assault and failed to protect Plaintiff from Defendant Frederick. After the alleged assault, Defendant Frederick told Defendants Booker, Littlejohn, and Tucker, "You saw nothing." Defendant Frederick put the other handcuff back on Plaintiff and escorted him to the medical department for a pre-hearing detention physical.

After he arrived at the medical department, Defendant Martin, a nurse, looked at Plaintiff and said there was nothing wrong with him. Plaintiff took off his mask and showed Defendant Martin his injuries. Plaintiff contends Defendants Frederick and Tucker grabbed Plaintiff, tied his mask on his face like a blindfold to hide the injuries, and escorted Plaintiff back to his cell.

Plaintiff states that Lieutenant Thorp later removed Plaintiff from his cell and brought him back to the medical department. Plaintiff alleges Defendant Martin cleaned Plaintiff's cuts, and then Defendant Hasan looked at the injuries. Defendant Hasan allegedly told Defendant Martin to close up the lacerations with Dermabond. Plaintiff told Defendants Martin, Hasan, and Barrone that he was in pain and experiencing symptoms of a concussion, but Plaintiff claims they failed to conduct an adequate exam or treat his pain. Plaintiff was then returned to his cell after spending ten minutes in the medical department.

An hour after he was returned to his cell, Defendant Cleveland came to speak with Plaintiff. Defendant Cleveland said that security had told him that Plaintiff had cut his own face, but it looked like Plaintiff had been in a fight. Plaintiff alleges he told Defendant Cleveland that he had a

concussion, dizziness, nausea, vomiting, and pain in his neck and back. Defendant Cleveland told Plaintiff that he would refer him to medical. Plaintiff also reported his symptoms to Defendant Griffin, but Defendant Griffin allegedly told Plaintiff that he did not care.

Plaintiff alleges that when he received his personal property, some of his books and legal work were missing. Plaintiff was told that Defendant Frederick had gone through Plaintiff's property and threw away the missing items.

The next day, Plaintiff was suffering from blurry vision, nausea, vomiting, head pain, back pain, throat pain, muscle spasms, and mouth pain from a broken tooth. Plaintiff alleges he lost consciousness several times during the day. Plaintiff alleges he continued to suffer from the same symptoms for several days. On September 11, 2020, Defendant Barrone allegedly denied Plaintiff his pain medication.

On September 14, 2020, Plaintiff send an I-60 request to Defendant Roberts requesting assistance. Plaintiff was taken to the medical department later that afternoon. Plaintiff alleges he saw Defendant Barrone, who threatened to write Plaintiff a disciplinary case for complaining about her to Defendant Roberts. Plaintiff alleges x-rays were taken at the medical department, but he did not receive other treatment or pain medication.

Plaintiff alleges he still had symptoms on September 15, 2020, and he submitted several sick calls. Defendant Meisser came to Plaintiff's cell to see if he was going to the medical department for dental treatment for his broken tooth. Plaintiff responded that he had no clothes, so Defendant Meisser allegedly denied Plaintiff dental treatment.

Plaintiff alleges Defendant Barrone refused to give Plaintiff his medication on September 16, 2020, when she made her rounds. Defendant Barrone allegedly threatened to have Plaintiff written up if he continued to complain.

On September 18, 2020, Plaintiff alleges he sent additional sick calls and a complaint about his medical care to Defendant Roberts. Plaintiff alleges he did not receive medical attention. On September 29, 2020, Plaintiff was transferred to another prison facility.

## Motion for Summary Judgment

Defendants Griffin and Littlejohn,[1] assert that, as members of the medical staff, they are not liable under a bystander liability theory because they were not required to intervene in a use of force by a member of the security staff. Defendants Hasan, Cleveland, Griffin, and Roberts assert that the evidence does not support a finding that they were deliberately indifferent to Plaintiff's serious medical needs. Finally, Defendants contend that the claims against them are unexhausted and should be dismissed.[2]

## Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248

---

[1] The medical claims against Defendant Littlejohn were previously dismissed.

[2] Plaintiff alleges that Defendants Martin, Meisser, and Barrone were also deliberately indifferent to his serious medical needs. Although Defendants Martin, Meisser, and Barrone have not been served with process or joined in the Motion, the Motion for Summary Judgment inures to the benefit of those Defendants as well. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (allowing non-answering defendants to benefit from the summary judgment motion filed by appearing defendants).

(1986); *Instone Travel Tech. Marine & Offshore v. Int'l Shipping Partners*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech.*, 334 F.3d at 427.

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991); *Jackson v. Procunier,* 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

Analysis

Title 42 U.S.C. § 1983 creates a cause of action against any person who, while acting under color of state law, causes a person to be deprived of a federally-protected constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Phillips v. Monroe Cnty.*, 311 F.3d 369, 373 (5th Cir. 2002). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must allege two elements. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez*, 446 U.S. at 640.

5

*Exhaustion*

Title 42 U.S.C. § 1997e(a) requires prisoners to exhaust administrative remedies before filing a civil rights action. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The statute provides, "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Exhaustion of administrative remedies is mandatory and is intended to give correctional officials an opportunity to address complaints internally before initiation of a federal suit. *See Porter v. Nussle*, 534 U.S. 516, 525 (2002). The exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or particular episodes. *Id.* at 532. A prisoner does not exhaust administrative remedies by simply filing each step without regard for procedural requirements. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Because exhaustion is a threshold issue, the district court may resolve factual disputes concerning exhaustion without a jury. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The primary purpose of a grievance is to alert prison officials to a problem so that it can be addressed, not to provide notice to a prison employee of a possible lawsuit. *Johnson*, 385 F.3d at 522. Thus, it is not necessary for a prisoner to identify future defendants by name in the grievance in every circumstance. *Id*. at 517. Nor is it necessary for an inmate to allege a legal theory or every fact that would support a legal theory in his grievance. *Id.* at 517-18. "A grievance should be

considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id*. at 517.

The Texas Department of Criminal Justice, Correctional Institutions Division has a two-step grievance procedure available to inmates. *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). Step 1 of the grievance procedure involves the prisoner submitting a grievance to the unit grievance coordinator. The unit grievance coordinator investigates the grievance, collects documents and other evidence, interviews witnesses, drafts an investigation report of findings, and prepares a recommendation for the review of the decision maker. The authorized decision maker for a Step 1 grievance is the warden or assistant warden. *Id.*

Step 2 of the grievance procedure involves the prisoner submitting an appeal to the division grievance investigator at TDCJ-CID headquarters. The division grievance investigator investigates the grievance, collects documents and other evidence, interviews witnesses, drafts an investigation report of findings, and prepares a recommendation for the review of the decision maker. The decision maker for a Step 2 grievance is the regional director or assistant director. *Id.*

The grievance procedure takes approximately ninety days to exhaust. Prisoners are allowed fifteen calendar days to file a Step 1 grievance. The first response is due forty calendar days from receipt of the grievance. The prisoner then has ten days to appeal the Step 1 grievance by filing a Step 2 grievance. Prison officials involved with Step 2 grievances have forty calendar days from receipt of the grievance to complete the investigation and respond to the grievance. *Id.* The prisoner must pursue the grievance through both steps for his claim to be exhausted. *Johnson*, 385 F.3d at 515.

The record reflects that Plaintiff filed multiple grievances about the events at issue in his complaint, but he only pursued one of those grievances through both steps of the grievance procedure. In grievance #2021005153, Plaintiff alleged that Defendant Frederick used excessive force against him while Defendants Tucker and Littlejohn and unidentified members of the medical staff were present. Plaintiff also alleged that he told Defendant Martin that he was in pain from a use of force, but Defendant Martin sent Plaintiff back to his cell. Although Plaintiff did not personally identify each of the Defendants involved in his claim, the allegations were sufficient to exhaust his claims that Defendant Frederick used excessive force against Plaintiff on September 10, 2020, while other Defendants watched without intervening, and that he did not receive an adequate medical examination or treatment on that day. Plaintiff's claims regarding his medical treatment in the following days, including all claims against Defendants Roberts and Meisser, are unexhausted and should be dismissed.

*Bystander Liability*

Plaintiff alleges Defendants Griffin and Littlejohn, members of the medical staff, were present when Defendant Frederick allegedly assaulted Plaintiff, but they did not intervene on his behalf. Correctional officers may be liable under § 1983 if they were present when another officer used excessive force and failed to take reasonable measures to protect the prisoner. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). To prevail on a bystander liability claim, the plaintiff must prove that the defendant: (1) knew that another officer was violating the plaintiff's constitutional rights; (2) had a reasonable opportunity to prevent harm to the plaintiff; and (3) chose not to act. *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017). In this instance, Defendants Griffin and Littlejohn are not correctional officers. Defendants Griffin and Littlejohn are members of the medical staff,

who have no legal duty to interfere in a use of force situation involving a prisoner and a correctional officer. *Ali v. McAnany*, 262 F. App'x 443, 446 (3d Cir. 2008). Therefore, they are entitled to summary judgment.

*Denial of Medical Treatment*

The only remaining medical claims concern Plaintiff's allegations that Defendants Martin, Hasan, Barrone, and Cleveland failed to provide him with adequate medical treatment following the use of force on September 10, 2020. Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components--one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, the plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). The plaintiff must also demonstrate that the defendants were deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the defendants were aware of an

9

excessive risk to plaintiff's health or safety, and consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534.

Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Plaintiff alleges Defendant Martin cleaned Plaintiff's cuts after the use of force and, at the direction of Defendant Hasan, closed the lacerations with Dermabond. Plaintiff claims Defendant Martin, Hasan, Barrone, and Cleveland should also have treated him for pain and addressed his complaints of concussion-like symptoms.

Plaintiff's medical records show that he was evaluated by Defendant Martin for assignment to pre-restrictive housing at 8:37 a.m. on September 10, 2020. Plaintiff was returned to the medical department at 9:00 a.m. with lacerations on his face. Defendant Martin completed an initial assessment. With the exception of the lacerations and some swelling on his face, Plaintiff's physical examination was within normal limits, he was neurologically oriented, and his pupils were equal and reactive. Defendant Martin noted that the lacerations appeared to be self-inflicted, and that Plaintiff

had a history of cutting himself. Defendant Martin contacted the provider, Defendant Hasan, who ordered Defendant Martin to apply Dermabond to Plaintiff's cuts and refer him to the mental health department. Shortly after Plaintiff was returned to his cell, Defendant Cleveland, a mental health provider, conducted a cell-side mental health interview. Plaintiff stated that he did not self-harm, and that the cuts were caused by Defendant Frederick hitting him in the face. Defendant Cleveland noted that Plaintiff was oriented to self, place, and situation.

The summary judgment evidence is insufficient to create a genuine dispute of material fact that Defendants Martin, Hasan, Barrone, or Cleveland were aware of a serious risk of harm to Plaintiff's health and consciously disregarded the risk. Plaintiff was examined and treated following the use of force. The defendants' conduct does not rise to the level of egregious intentional conduct required to satisfy the deliberate indifference standard. *See Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006). Plaintiff's disagreement with their conclusions about his medical condition and treatment does not rise to the level of a constitutional violation.

## Recommendation

Defendants' Motion for Summary Judgment should be granted, and Defendants Hasan, Cleveland, Griffin, Littlejohn, Roberts, Martin, Meisser, and Barrone should be dismissed from this action.

## Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 3rd day of August, 2024.

 

_____
Zack Hawthorn
United States Magistrate Judge